Exhibit B

1   JAMES T. HANNINK (131747)
    jhannink@sdlaw.com
2   ZACH P. DOSTART (255071)
    zdostart@sdlaw.com
3   DOSTART HANNINK & COVENEY LLP
    4180 La Jolla Village Drive, Suite 530
4   La Jolla, California 92037-1474
    Tel:  858-623-4200
5   Fax: 858-623-4299

6   Attorneys for Plaintiff

7

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF ALAMEDA

10

| | |
|---|---|
| 11   SIEARA FARR,<br>12   individually and on behalf of all others<br>    similarly situated,<br>13<br>          Plaintiff,<br>14<br>  vs.<br>15<br>  ACIMA CREDIT, LLC,<br>16   a Utah limited liability company;<br>    and DOES 1-50, inclusive,<br>17<br>18         Defendants. | CASE NO.  RG20078630<br><br>CLASS ACTION<br><br>FIRST AMENDED COMPLAINT FOR:<br><br>1)  VIOLATION OF THE KARNETTE<br>    RENTAL-PURCHASE ACT<br>    [Cal. Civ. Code, § 1812.620 et seq.]<br><br>2)  VIOLATION OF CALIFORNIA<br>    CONSUMERS LEGAL REMEDIES ACT<br>    [Cal. Civ. Code, § 1750 et seq.]<br><br>3)  UNFAIR COMPETITION<br>    [Cal. Bus. & Prof. Code, § 17200 et seq.] |

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

## INTRODUCTION

1.      This class action complaint seeks to remedy the violation of California consumer protection statutes by defendant Acima Credit, LLC ("Acima").

2.      Acima offers extended payment terms for consumer goods pursuant to rental-purchase agreements.  In particular, for consumers who desire to obtain merchandise but may not be able to pay the cost up front, Acima offers to enter into a rental-purchase agreement pursuant to which the consumer can make payments over a period of time.  In coordination with retail merchants with whom Acima has established business relationships, Acima offers such rental-purchase arrangements at retail businesses that sell, among other things, automotive goods, household furniture, appliances, and electronics.

3.      To guard against potential abuses inherent in consumer rental-purchase agreements, California has enacted a comprehensive statutory framework that regulates all rental-purchase transactions, codified in the Karnette Rental-Purchase Act, Cal. Civ. Code, § 1812.620 et seq. (the "Karnette Act").  Therefore, for transactions that take place within California, Acima is required to comply in all respects with the Karnette Act.  As described below, with respect to rental-purchase agreements entered into in the State of California, Acima engages in business practices that violate the Karnette Act.

## PARTIES

4.      Plaintiff Sieara Farr ("Plaintiff") is an individual residing in Oakland, California.

5.      Plaintiff is informed and believes and thereon alleges that defendant Acima Credit, LLC is a Utah limited liability company that does business in the State of California.

6.      Plaintiff does not know the names of the defendants sued as DOES 1 through 50 but will amend this Complaint when that information becomes known.  Plaintiff alleges on information and belief that each of the DOE defendants is affiliated with the named defendant in some respect and is in some manner responsible for the wrongdoing alleged herein, either as a direct participant, or as the principal, agent, successor, alter ego, or co-conspirator of another defendant.  For ease of reference, Plaintiff will refer to the named defendant and the DOE defendants collectively as "Defendants."

1

FIRST AMENDED COMPLAINT

7.     Venue is proper in this Court because Plaintiff resides in Alameda County and the rental-purchase agreement between Acima and Plaintiff was signed in Alameda County.

## BACKGROUND REGARDING RENTAL-PURCHASE TRANSACTIONS
## AND THE KARNETTE ACT

8.     In a traditional retail sale, title to personal property is conveyed from the merchant to the consumer when payment is made at the point of sale.  As an alternative to a traditional retail sale, California law allows merchants to rent or lease personal property to consumers.

9.     In California, rental-purchase agreements are regulated by the Karnette Act, Civ. Code, § 1812.620 et seq.  (Unless otherwise indicated, statutory citations in this Complaint are to the Civil Code.)

10.     In a "rental-purchase agreement," the merchant (referred to as the "lessor," § 1812.622(c)) retains ownership of the personal property while the consumer takes possession and agrees to make periodic lease payments over time, usually on a weekly, bi-weekly, or monthly schedule.  The consumer can eventually acquire ownership of the personal property by making an agreed-upon number of lease payments.  These payments, in the aggregate, are referred to as the "total of payments."  (§ 1812.622(l).)

11.     Studies show that the customer base for the rent-to-own industry consists primarily of low-income and financially-distressed consumers, a disproportionate number of whom are minorities.[1]  Rental-purchase arrangements offer immediate access to merchandise for what *appears* to be a low periodic payment, but in fact, such transactions are very costly.  The Federal Trade Commission has cited studies showing that the total cost of purchasing through a rent-to-own transaction is usually two or three times the retail price of comparable goods.

---

[1] *See* Testimony of Margot Saunders, Before a Hearing of the U.S. House of Representatives Financial Services Committee, 26 July 2011, entitled "Examining Rental Purchase Agreements and the Potential Role for Federal Regulation" *available at* https://www.govinfo.gov/content/pkg/CHRG-112hhrg67944/html/CHRG-112hhrg67944.htm (last accessed November 13, 2020).  According to the Federal Trade Commission's Survey of Rent-to-Own Customers, published in April 2000, 59% of rent-to-own customers had a household income of less than $25,000, and 41% were members of a minority community.

2

FIRST AMENDED COMPLAINT

12.     Among other things, the Karnette Act prohibits a lessor from charging any fee that is not permitted by the Karnette Act.  (§ 1812.624(a)(7).)  A "fee" is defined as "any payment, charge, fee, cost, or expense, however denominated, other than a rental payment." (§ 1812.622(g).)

13.     For any fee that *is* permitted by the Karnette Act, a lessor can charge such a fee only to the extent it is "reasonable and actually incurred by the lessor." (§ 1812.624(a)(7).)  Moreover, to the extent a fee is permitted by the Karnette Act, the amount and purpose of the fee must be stated in the rental-purchase agreement. (§ 1812.623(a)(7).)  The lessor has the burden of proof to establish that a fee was reasonable and that it was an actual cost incurred by the lessor.  (§ 1812.624(a)(7).)

## PLAINTIFF'S RENTAL-PURCHASE TRANSACTION

14.     On September 18, 2020, Plaintiff went to Direct and More Furniture located at 2952 Alvarado Street, San Leandro, California.  Direct and More Furniture is a retailer with whom Acima has an established business relationship.

15.     After considering available merchandise, Plaintiff expressed an interest in a sofa and loveseat.  Following a conversation with the sales agent, Plaintiff agreed to complete the transaction including a rental-purchase agreement with Acima.  A true and correct copy of the rental-purchase agreement between Acima and Plaintiff is attached hereto as Exhibit 1.

16.     Using a computer at the store, the sales agent directed Plaintiff to fill out an online application with Acima.  In order to submit the application, Acima required Plaintiff to pay a $50 processing fee, which Acima charged to Plaintiff's debit card.  After submitting the application, Plaintiff was notified that she was approved by Acima to lease merchandise at Direct & More Furniture.

17.     The rental-purchase agreement does not disclose the processing fee that was paid by Plaintiff.  Instead, in the rental-purchase agreement, Acima lumped the $50 processing fee into the figure shown as the "Acima Cash Price."

18.     By charging the processing fee to Plaintiff, and by failing to set forth the processing fee in the rental-purchase agreement, Acima violated § 1812.624(a)(7), § 1812.623(a)(7), and/or § 1812.639.

3

**ACIMA'S ARBITRATION CLAUSE**

19.     Acima's standardized form of rental-purchase agreement contains a section entitled "Jury Trial Waiver and Arbitration Clause" ("Arbitration Clause").  (See Ex. 1 at 5-7.)

20.     The Arbitration Clause provides that Acima's customers can opt out of the clause by providing written notice to Acima within 30 calendar days of signing the rental-purchase agreement.  (Ex. 1 at 7.)  Plaintiff timely opted out of the Arbitration Clause.  Therefore, Plaintiff is not bound by any of the provisions of the Arbitration Clause.

21.     With respect to consumers who sign a rental-purchase agreement but do not timely opt out of the Arbitration Clause, the Arbitration Clause generally provides that disputes between the consumer and Acima are to be resolved in individual arbitration or small claims court.  However, the Arbitration Clause expressly provides that injunctions and other equitable relief are not subject to that restriction.  Specifically, in the row that addresses the query "Do other options exist?," the answer is "Yes" with a further explanation that "Both parties may seek remedies which don't claim money damages.  This includes pre-judgment seizure, injunctions, or equitable relief."  (Ex. 1 at 6.) Therefore, all of Acima's customers are authorized to seek equitable relief in court.

22.     This Complaint seeks restitution and other equitable relief on behalf of all consumers who, within the limitations period, were charged a processing fee by Acima in connection with a rental-purchase agreement entered into in the State of California, and a public injunction for the benefit of the people of the State of California.

**CLASS ACTION ALLEGATIONS**

23.     Pursuant to Code of Civil Procedure § 382, Plaintiff seeks equitable relief on behalf of the following Class: "All individuals who, during the applicable statute of limitations, entered into a rental-purchase agreement with Acima Credit, LLC in the State of California and were charged a processing fee.  Excluded from the Class are all employees of Defendants, all employees of Plaintiff's counsel, and the judicial officers to whom this case is assigned."

24.     Ascertainability.  The members of the Class may be ascertained by reviewing records in the possession of Defendants and/or third parties, including without limitation Defendants' customer records and billing records.

4

25.   <u>Common Questions of Fact or Law</u>.   This lawsuit is suitable for class treatment because common questions of fact and law predominate over any individual issues.   Common questions include but are not limited to: (1) whether the processing fee charged by Defendants is a fee that is permitted by the Karnette Act; (2) if so, whether the processing fee is reasonable; (3) if so, whether the processing fee is an amount that is actually incurred by Acima; (4) whether Defendants' conduct constitutes an unlawful or unfair business act or practice; (5) Defendants' record-keeping practices; and (6) the appropriate remedies for Defendants' conduct, including the appropriate terms of an injunction.

26.   <u>Numerosity</u>.   The Class is so numerous that joinder of all Class members would be impracticable.   Plaintiff is informed and believes and thereon alleges that the Class consists of at least 100 members.

27.   <u>Typicality and Adequacy</u>.   The claims by which Plaintiff seeks equitable relief are typical of the claims of all other Class members.   Plaintiff has no interests that are adverse to those of the other Class members.   Plaintiff will fairly and adequately protect the interests of the Class members.

28.   <u>Superiority</u>.   A class action is superior to other methods for resolving this controversy. Because the amount of restitution or other monetary relief to which each Class member may be entitled is low in comparison to the expense and burden of individual litigation, it would be impracticable for Class members to redress the wrongs done to them without a class action forum. Furthermore, on information and belief, Class members do not know that their rights have been violated.   Class certification would also conserve judicial resources and avoid the possibility of inconsistent judgments.

29.   <u>Risk of Inconsistent or Varying Adjudications</u>.   Prosecuting separate actions for equitable relief by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.   Moreover, as a practical matter, adjudication of equitable relief with respect to individual Class members could be dispositive of the interests of others not parties to the individual adjudications or could substantially impair or impede their ability to protect their

1   interests.

2       30.   <u>Defendants Have Acted on Grounds Generally Applicable to the Class</u>.  Defendants

3   have acted on grounds that are generally applicable to the members of the Class, thereby making

4   appropriate final injunctive relief and/or declaratory relief with respect to the Class as a whole.

5                                   **FIRST CAUSE OF ACTION**

6                           (Violation of the Karnette Rental-Purchase Act)

7       31.   Plaintiff incorporates by reference the preceding paragraphs.

8       32.   Defendants have violated the Karnette Act by charging Plaintiff a processing fee,

9   which is a fee that is not permitted by the Karnette Act, in violation of § 1812.624(a)(7).

10      33.   Alternatively, in the event it is determined that the Karnette Act permits a lessor to

11  charge a processing fee, the processing fee charged by Defendants to Plaintiff was not reasonable,

12  and/or was not actually incurred by Defendants.  The charging of such a fee therefore violates

13  § 1812.624(a)(7).

14      34.   Defendants failed to set forth the purpose and amount of such fee in Plaintiff's rental-

15  purchase agreement, in violation of § 1812.623(a)(7).

16      35.   Plaintiff is informed and believes and thereon alleges that, when Acima enters into

17  rental-purchase agreements with other California consumers, Acima violates the Karnette Act in the

18  same ways as alleged above regarding Plaintiff's rental-purchase transaction.  These unlawful

19  practices affect many consumers throughout the State of California.  The unlawful charging of a

20  processing fee affects many consumers throughout the State of California.  Plaintiff hereby notifies

21  Acima that it must preserve and maintain all business records relating to the charging of processing

22  fees in connection with rental-purchase agreements entered into in the State of California, regardless

23  of where such records are located and regardless of the format in which they may be stored or

24  maintained.

25                                  **SECOND CAUSE OF ACTION**

26                          (Violation of the Consumers Legal Remedies Act)

27      36.   Plaintiff incorporates by reference the preceding paragraphs.

28

6

37.     Plaintiff and Class members are "consumers" within the meaning of § 1761(d) in that they sought or acquired goods and/or services for personal, family, or household purposes.

38.     The goods and/or services that are the subject of the rental-purchase agreements entered into by Plaintiff and Class members are "goods" and/or "services" within the meaning of § 1761(a) and (b).

39.     The rental-purchase agreements entered into by Plaintiff and Class members reflect "transactions" within the meaning of § 1761(e).

40.     Defendants have violated § 1770(a)(14) by representing that the transactions reflected in the rental-purchase agreements involve rights or obligations that it does not have or involve, or that are prohibited by law.

## THIRD CAUSE OF ACTION

(Unfair Competition)

41.     Plaintiff incorporates by reference the preceding paragraphs.

42.     By violating the Karnette Act as alleged above, and by violating the CLRA as alleged above, Defendants have engaged in a business practice that is unlawful, in violation of Bus. & Prof. Code § 17200 et seq.

43.     By violating the Karnette Act as alleged above, and by violating the CLRA as alleged above, Defendants have engaged in a business practice that is unfair, in violation of Bus. & Prof. Code § 17200 et seq. Defendants' business practice of charging processing fees as described herein has no social utility since it serves only to increase the profit accruing to Defendants without providing any corresponding benefit to consumers. Plaintiff could not reasonably have avoided her injuries. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

44.     Plaintiff has lost money or property as a result of Defendants' conduct alleged herein.

7

FIRST AMENDED COMPLAINT

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On the First Cause of Action:

1.     For a public injunction enjoining Defendants from charging processing fees in violation of the Karnette Act with respect to rental-purchase agreements in California;

2.     For twenty-five percent of an amount equal to the total amount of payments required to obtain ownership if all payments were made under the rental-purchase agreement, subject to a minimum of $100 and a maximum of $1,000, pursuant to § 1812.636(a)(2);

3.     For an award of attorney's fees and costs, pursuant to § 1812.636(a)(3);

4.     For a judicial declaration that the processing fees charged by Defendants violate the Karnette Act, as well as restitution and other equitable relief as the Court deems proper, pursuant to § 1812.636(a)(5);

On the Second Cause of Action:

5.     For a public injunction enjoining Defendants from representing that transactions reflected in rental-purchase agreements involve rights or obligations that it does not have or involve, or that are prohibited by law, pursuant to § 1780(a)(2);

6.     For an award of attorneys' fees and costs, pursuant to § 1780(e);

On the Third Cause of Action:

7.     For a public injunction enjoining Defendants from charging processing fees in violation of the Karnette Act, and from representing that transactions reflected in rental-purchase agreements involve rights or obligations that it does not have or involve, or that are prohibited by law;

8.     For restitution;

On All Causes of Action:

9.     For reasonable attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5;

10.     For costs of suit;

/ / /

/ / /

8

11.   For pre-judgment interest; and

12.   For such other relief that the Court deems just and proper.


Dated: November 13, 2020                    DOSTART HANNINK & COVENEY LLP

                                            ZACH P. DOSTART
                                            Attorneys for Plaintiff

923994.1

FIRST AMENDED COMPLAINT

Exhibit 1



**KNOW YOUR RIGHTS**
Here are some of your key rights related to your lease under California law:

**Canceling your lease**
You can cancel your lease at any time before you receive the Property.

**Early purchase options**
You can purchase the Property outright within three months from your lease's start date by paying Acima Credit the Acima Cash Price plus tax, and Other Charges due, minus any payments you have made.
After three months, you can purchase the Property before the end of the Rental Period by making any payment then due or overdue plus Other Charges due and 45.0% of the remaining Renewal Payments. For example, assume you do not owe any past due payments or owe any fees. Also, assume you have a 12-month lease for a product with a cash price of $500 and have made payments for 6 months. You could obtain ownership by paying $500 x 6/12, or $250.

**Reinstating your lease after default**
If you default on your lease, you can reinstate it without losing any of your rights. All you have to do is pay Acima Credit all of the money you owe, including any late fees. If you still have the merchandise, you must pay any money owed by the end of the 10th day after your payment was due. If you return the merchandise to Acima Credit, you can reinstate the lease by making these payments within one year after your payment was due.

**Reduced payments**
If you have made at least half of your payments, you may be entitled to a lower payment if your income drops by 25% or more. To qualify for a lower payment, your reduced income must be due to involuntary job loss, involuntary reduced employment, illness, pregnancy, or disability. The amount your payment will be lowered by is the lesser of 50% or the percentage of your lost income. For example, if your income has been involuntarily reduced by 10%, your payments would be 10% lower. To acquire ownership of the property, you must still pay the same total amount, but the lower payments will mean you will pay that amount over a longer time period.

**Possession of the Leased Property in Good Working Order**
Acima Credit will maintain your leased property in good working order while your lease is in effect. If your property is not working, Acima Credit will try to repair or replace the property at no charge within 2 business days. If Acima Credit can't repair or replace your property within 2 business days, Acima will provide you with loaner property of comparable quality and condition while we repair the property. If Acima Credit can't repair the property to your reasonable satisfaction within 30 days (or a longer period you agree to), then we will replace the property with comparable property. You will not be charged any rental fee while the property or loaner property provided to you is not working. These obligations do not apply where you damage the property by negligent, reckless, willful, wanton, or intentional conduct.

**Loss or damage to the leased property**
You are responsible for loss or damage to the leased property caused by your negligence, reckless conduct or intentional acts. You are not responsible for loss or damage caused by acts of God, such as natural disasters. You are also not responsible when the leased property is stolen if (i) there is evidence of burglary, such as a police report, or (ii) you prove that you did not commit the theft or help the person who stole the property.

**You previously received, and agreed to in the Application, the Application Terms, Privacy Policy, Terms of Service, and ESIGN Agreement.**

THIS RENTAL-PURCHASE AGREEMENT CONTAINS AN ARBITRATION PROVISION (SEE ¶ 18 OF THE ADDITIONAL LEASE TERMS). UNLESS YOU PROMPTLY REJECT THE ARBITRATION PROVISION (SEE ¶ 18), THE ARBITRATION PROVISION WILL HAVE A SUBSTANTIAL EFFECT ON YOUR RIGHTS IN THE EVENT OF A DISPUTE, INCLUDING YOUR RIGHT TO BRING OR PARTICIPATE IN A CLASS PROCEEDING.

| LESSOR/OWNER | ACIMA CREDIT, LLC, PO Box 1667, Draper, UT 84020 |
| | Phone: (801) 297-1982 \| Online Portal: https://customer.acimacredit.com/ |
| LESSEES/POTENTIAL PURCHASERS | Sieara Farr,          [REDACTED]                     , OAKLAND, CA 94605 |

This Rental-Purchase Agreement ("Agreement") includes the "Disclosure Table," notice and Additional Lease Terms and Exhibit B below. In this Agreement, "you" and "your" mean the person(s) signing this Lease as Lessee/Potential Purchaser, and "we," "our," and "us" mean the Lessor/Owner identified above and its successors and assigns.

<u>DISCLOSURE TABLE</u>

| TOTAL OF PAYMENTS/TOTAL COST/RENT-TO-OWN PRICE | COST OF RENTAL | ACIMA CASH PRICE | |
|---|---|---|---|
| $4,927.50 | $2,677.50 | $2,250.00 | |
| You must pay this amount to own the property if you make all the regular Renewal Payments (excludes tax). You can buy the property for less under the early purchase option. | Amount over Acima Cash Price you will pay if you make all regular Renewal Payments (excludes tax). | Property available at this price for cash from the Lessor at the time of the Agreement. See about your early purchase option rights. | |
| | AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | RENTAL PERIOD |
| | $187.60/every-other-week | 26 | 365 DAYS |
| | Taxes will be added to all payments when required to do so by your state. | | This represents the duration of the Lease if all regularly scheduled payments are made. |
| The rental property is NEW and is being acquired by the lessor on the lease date above. | | | |

BY SIGNING THIS AGREEMENT: (1) YOU AGREE TO ALL ITS TERMS, INCLUDING THE ADDITIONAL LEASE TERMS BELOW (SEE, IN PARTICULAR THE EFT AUTHORIZATION (¶ 14) AND ARBITRATION PROVISION (¶ 18)) AND (2) YOU ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS AGREEMENT.

**Additional Lease Terms**

1. **Definitions:** "Agreement" means this Rental-Purchase Agreement. "You" and "your" mean the person signing this Agreement as Lessee. "We," "our," and "us" mean Acima Credit, LLC, and its subsidiaries, successors, and assigns, as Lessor/Owner of the Property. "Property" means the item(s) that are the subject matter of this Agreement; specifically, the **NEW 12992**. "Initial Payment" means the payment required to consummate this Agreement. "Renewal Payment(s)" mean periodic or regular lease payments after the Initial Payment for use of the leased Property. "Other Charges" mean any and all applicable charges, costs, and fees allowed for under this Agreement, which may accrue from time to time, after the commencement of the Agreement, and are not included in Renewal Payments. You should read the Agreement for an explanation of the Other Charges. "Days" means calendar days unless otherwise specified.

2. **Payments:** As set forth in the Disclosure Table, Renewal Payments of $187.60, plus tax of $0.00, totaling $187.60, are due every-other-week thereafter while the Agreement remains in force, commencing on the day indicated in your lease application that you receive income or benefits, but no sooner than 7 days after the delivery date. Renewal Payments are made in advance. Acima charges and collects tax with each Renewal Payment when required to do so by your state. Your payment amount may change to the extent the tax rate changes after the date of this Agreement.

3. **Cash Price:** The Acima Cash Price is $2,250.00 (which may include a delivery fee negotiated by you with Direct & More Furniture), and is the amount we would charge for a cash sale of the Property.

4. **Acquisition of Property; Total of Payments; Early Purchase Options:** The total number and dollar amount of payments necessary to acquire ownership of the Property, disclosed in the Disclosure Table, do not include Other Charges, such as late payment fees or tax. You should read this Agreement for an explanation of any additional fees. The Agreement will terminate, and you will own the Property if you make the Initial Payment and 26 Renewal Payments totaling $4,927.50 (the "Total of Payments"). You can purchase the Property at any time during the first three months of the Agreement by paying us the Acima Cash Price plus tax and any Other Charges due, minus any payments you have made. After this time, you can purchase the Property before the end of the Rental Period by making any payment then due or overdue plus Other Charges due and 45.0% of the remaining Renewal Payments. Applicable tax will be added to all payments. The Cost of Rental is $2,677.50. It is the difference between the Total of Payments and the Acima Cash Price.

5. **Other Charges:** Not included in Renewal Payments: i) Costs of Lost/Destroyed/Damaged Property; ii) Repossession Costs; iii) Collection Costs; iv) Re-delivery Costs; v) $25.00 Returned Payment Fee (or the maximum amount permitted by law) for any payment that is returned to us unpaid; and vi) Late Payment Charges. If any payment due weekly is at least 3 days late or any payment due less often is at least 7 days late, we will charge you a late payment fee equal to the lesser of 5% of the Renewal Payment or $5, but not less than $2.

6. **Ownership and Nature of Agreement:** WE OWN THE PROPERTY. This Agreement is a lease; a lease is a legal arrangement whereby the lessee/renter (you) agrees to pay the lessor/owner of the property (us) for use of the property for a specified period of time. You make Renewal Payments for the use of the Property for each renewal period only. You do not obtain ownership rights until you pay the Total of Payments plus all applicable taxes, or exercise an early purchase option. **You do not have the right to keep the Property if you do not make timely Renewal Payments**. If you do not want to lease the Property but would rather purchase the Property now, you should consider cash or credit terms that may be available to you.

7. **Damage or Loss of Property:** You are responsible to pay us the lesser of the fair market value of the Property if, and as of the time, it is lost, stolen, damaged beyond normal wear and tear, or destroyed, or the amount required to exercise an early purchase option. We are not responsible for loss or damage caused by your intentional, willful, wanton, reckless, or negligent conduct. We do not carry insurance on this Property. You are responsible for its safety until it is returned to us. **Disclosure of Condition of Property:** You understand the Property may be new or used. You agree that we have not made any representations of the Property other than those contained in this Agreement. If you notice any damages to the Property, other than those disclosed by us, you agree to inform us of the damages before signing and we will amend this Agreement accordingly. **By signing this Agreement, you agree that you are satisfied with the condition of the Property and that no other damages exist other than those disclosed by us as follows: None.**

8. **Maintenance and Warranty:** We are responsible for maintaining the Property that is not operating properly during the Agreement term. We will repair the Property within 2 business days after you notify us of the problem. If we cannot repair the Property within this time, we will provide you with loaner Property. If we cannot repair the Property within 30 days after that, or longer time that you agree to, we will replace the Property with substitute Property that is satisfactory to you. We will not be responsible for the costs or the results of any repairs for damage caused by improper use. If any unexpired portion of all warranties provided by the manufacturer, distributor, seller of the Property, or third-party warranty, covers the Property at the time you acquire ownership, the warranties will be transferred to you, if allowed by the terms of the warranties. **To the extent permitted by law, we do not provide any Warranty of Merchantability or Fitness for a Particular Purpose, either**

Exhibit 1, Page 3

**Express or Implied, on the Property. You are renting the Property "as is" and "with all faults." You must keep the Property at the address listed above, unless we give you permission to move it.**

9. **Minimum Rental Period:** The minimum rental period is the time between when you receive the Property and your first Renewal Payment. **You agree to make your first Renewal Payment outlined within this Agreement.** If you choose to return the Property thereafter, you must pay the unpaid Daily Lease Rate for the time you possess the Property, plus Other Charges due. The "**Daily Lease Rate**" is the Total of Payments divided by the number of days of the term of the Rental Period. **Your Rental Period is renewed with each Renewal Payment but will not exceed 365 days. Your Daily Lease Rate is $13.50.**

10. **Termination:** We may terminate this Agreement and recover the Property if you breach this Agreement. You may terminate this Agreement at any time without penalty by returning the Property in accordance with our directions, and by paying us any delinquent Renewal Payments, plus Other Charges due at the time of termination. You agree that there is no refund of any Renewal Payment for return or surrender of the Property before the end of the Rental Period. **Collection Costs:** If you default on this Agreement, you may be responsible for all collection costs we incur. We may, at our discretion, refer delinquent accounts to a third-party collection agency. **Right of Repossession:** If this Agreement terminates due to your breach of the Agreement, and you fail to return the Property, we have the right to repossess the Property. You agree to pay all costs of repossession incurred, to the extent permitted by law. **Right of Cancellation:** You have the right to cancel the Agreement without penalty or obligation if you have not taken possession of the Property.

11. **Reinstatement:** You will be in breach of this Agreement if you fail to make a timely Renewal Payment within 7 days of the due date, if you pay weekly, or within 10 days, if you pay less frequently than weekly. If you are in breach of this Agreement or you do not renew, we have the right to take possession of the Property so long as we don't breach the peace. However, unless you default on three consecutive payments, you may reinstate the Agreement without losing any rights previously acquired by making all amounts you owe to us within 7 days if you pay weekly or within 10 days if you pay less frequently than weekly. If you return the Property to us within that time, you will have 1 year from the date of the return to reinstate by making all payments due. If you reinstate, we will furnish you with the same Property or substitute property of the same brand, if available, and of comparable quality, age, condition and warranty coverage.

12. **Income Interruption Rights:** If your income is reduced by 25% or more after you have paid at least half of the Total of Payments, you may qualify for a reduction in the amount of your Renewal Payments. To qualify for a reduction, the reduction of your income must be due to job loss, involuntary reduced employment, illness, pregnancy, or disability, and you must provide evidence of the amount and cause of the reduction. Upon proof of the reduction, we will reduce the amount of each Renewal Payment by the same percentage amount that your income has been reduced, up to a maximum reduction of 50%. This reduction will continue during the period your income is reduced. Once your income is no longer reduced, your Renewal Payments will return to their normal amount, as disclosed in this Agreement. The Total of Payments will not change; however, the length of this Agreement and the total number of Renewal Payments that you will need to make if you wish to acquire ownership of the Property will increase.

13. **Payment Method**: We will initiate electronic fund transfers from the bank account and/or credit card (or any substitute account you designate) provided by you in your application for financing.

14. **Payment Authorization:** You authorize us to initiate an electronic fund transfer ("EFT") over the ACH network (or another network of our choosing) from any bank account (or if no bank account is specified, then any account or card) listed on your application, or subsequently authorize us to debit or charge, for any renewal payment provided in this Agreement by its renewal date. If this EFT is returned unpaid, you authorize us to charge any card or bank account provided to us for such payment. If your payment is returned unpaid, you authorize us to initiate a one-time EFT from your bank account or card to collect a fee of $25.00. You agree that we may resubmit any returned EFT or card charge as permitted by law and network rules. We are not responsible for any bank fees you incur resulting from returned payments. Instead of or in addition to any of the EFTs and card charges described in this section, you also authorize us to process any EFTs or card charges you subsequently confirm by phone, text message, or email. If we make an error in processing an EFT or card charge, you authorize us to initiate an EFT or card charge to correct the error. You may terminate this authorization to initiate EFTs and to charge the card. You may modify any bank account and card information, or change your scheduled payment dates, if the new payments coincide with the dates you receive income and do not materially increase the Agreement term. We will honor your termination or modification request if you contact us by phone at (801) 297-1920, or in writing at PO Box 1667, Draper, UT 84020, in time for us to receive your request at least 3 business days before the payment is scheduled to be made or far enough in advance for us to reasonably act on it. For purposes of this Agreement, our business days are Monday through Friday; holidays are not included. If any payment cannot be obtained by EFT or card charge, you remain responsible for such payment.

15. **Reporting:** You authorize and instruct us to obtain a consumer report from a consumer reporting agency of our choosing, for purposes of verifying information on your application. You approve and acknowledge that we may report information about your lease and payment history to credit bureaus. You understand that we will not report your account as paid to any credit bureau until all payments have settled. You understand that if any processed and/or cleared payments are rescinded after we were authorized to process them, we reserve the right to re-open your account and report accordingly to any credit bureau. If you believe that any information about your lease that we may have received from, or furnished to a consumer reporting agency is false or fraudulent, or if you believe that you have been the victim of identity theft in connection with any lease made by us, you may request a copy of your lease records by writing to us at *Acima Credit, LLC,* **ATTN:** **Reporting Compliance**, *PO Box 1667, Draper, UT 84020.*

16. **Returning a Computer or Other Electronic Device**: If you return or exchange a computer, tablet or other electronic device (collectively referred to as "Device"), it is your responsibility to remove all personal information or data containing personal information or other information that may be of a personal nature (such as emails, photos, or videos) and any software you have installed (collectively referred to as "Information") on the Device. Therefore, it is your responsibility to remove or make a back-up copy of any Information on the Device and restore the Device back to its original state, but this is not a guarantee that the Information will not be accessible by any subsequent user. We shall not be responsible for accessing, deleting, or destroying any Information left on the Device. You agree to hold us harmless in the event that any or all of your Information is accessed, altered, deleted, or destroyed as a result of returning the Device.

17. **Servicing Devices**: (a) In the event that we service your Device, we or our service providers may have access to Information (such as emails, photos, videos, web searches, web queries, websites you visited, or technical information) loaded or stored on or recorded by your Device. While we will attempt to preserve as much of your Information as possible, in some circumstances Information may be permanently altered, deleted, or destroyed in the process of carrying out the servicing. Therefore, you should remove or make a back-up copy of any Information that you want to preserve or keep. You understand that by providing the Device for servicing, we may have access to any Information that has been loaded, stored on, or recorded by the Device. You consent to our viewing or accessing that Information as we deem necessary to carry out the requested service. You also agree to hold us harmless in the event that any or all of my Information is altered, deleted, or destroyed as a result of the service process or any type of access.
(b) WE EXPRESSLY DISCLAIM ALL WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRIGEMENT. WE MAKE NO WARRANTY THAT THE SERVICE WILL MEET YOUR REQUIREMENTS OR THAT THE SERVICE WILL BE TIMELY, SECURE, OR ERROR-FREE, NOR DO WE MAKE ANY WARRANTY AS TO THE RESULTS THAT MAY BE OBTAINED FROM THESE SERVICES.
(c) We shall not be liable for any direct, indirect, incidental, special, or consequential damages resulting from servicing your Device or any access to or alteration, deletion, or destruction of any Information on the Device, including but not limited to, damages for value, loss of profits, or other intangibles, even if we have been advised of the possibility of such damages. Some jurisdictions do not allow the limitation or exclusion of liability for incidental or consequential damages so some of the above limitation or exclusion of liability arising from or related to servicing your Device shall be limited to the sums you paid under the Agreement.
(d) We shall not be liable for any failure or delay in performance due to any cause beyond our control. We reserve the right to refrain from providing the requested services if we are unable to do so, including, but not limited to, instances where you did not authorize us to restore the Device.

18. **JURY TRIAL WAIVER AND ARBITRATION CLAUSE.** By signing, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause").
**Background and Scope.**

| What is arbitration? | An alternative to court. | In arbitration, a third party ("Arbiter") solves Disputes in a hearing ("hearing"). You, related third parties, and we, waive the right to go to court. Such "parties" forgo jury trials. |
|---|---|---|
| Is it different from court and jury trials? | Yes. | The hearing is private and less formal than court. Arbiters may limit pre-hearing fact finding, called "discovery." The decision is final. Courts rarely overturn Arbiters. |
| Who does the Clause cover? | You, Us, and Others. | This Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute. |
| Which Disputes are covered? | All Disputes. | In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information.  It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate. |
| Are you waiving rights? | Yes. | You waive your rights to:<br>1.  Have juries solve Disputes.<br>2.  Have courts, other than small-claims courts, solve Disputes.<br>3.  Serve as a private attorney general or in a representative capacity.<br>4.  Be in a class action. |

Exhibit 1, Page 5

| | | |
|---|---|---|
| Are you waiving class action rights? | Yes. | COURTS AND ARBITERS WON'T ALLOW CLASS ACTIONS. You waive your rights to be in a class action, as a representative and a member. Only individual arbitration, or small-claims courts, will solve Disputes. You waive your right to have representative claims. |
| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce. Thus, the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then your state's law / the state law where you were when you signed governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
| Can the parties try to solve Disputes first? | Yes. | We can try to solve Disputes if you call us at (801) 297-1982. If this doesn't solve the Dispute, mail us written notice, within 30 days of the Dispute date. In your notice, tell us the details and how you want to solve it. We will try to solve the Dispute. If we make a written offer ("Settlement Offer"), you can reject it and arbitrate. If we don't solve the Dispute, either party may start arbitration. To start arbitration, contact an Arbiter or arbitration group listed below. No party will disclose settlement proposals to the Arbiter during arbitration. |
| How should you contact us? | By mail. | Send mail to: ATTN: Compliance Department, PO Box 1667, Draper, UT 84020. You can call us or use certified mail to confirm receipt. |
| Can small-claims court solve some Disputes? | Yes. | Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter. |
| Do other options exist? | Yes. | Both parties may use lawful self-help remedies. This includes set-off or repossession and includes our later sale, donation, or rental of the Property. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief. |
| Will this Clause continue to govern? | Yes, unless otherwise agreed. | The Clause stays effective, unless the parties sign an agreement stating it doesn't. The Clause governs if you rescind the transaction. It governs if you default, renew, prepay, or pay. It governs if you terminate, if you reinstate, and if you return the Property. It governs if your Agreement is discharged through / impacted by bankruptcy. The Clause remains effective, despite a transaction's termination, amendment, expiration, or performance. |

<strong>Process.</strong>

| | | |
|---|---|---|
| How does arbitration start? | Mailing a notice. | Either party may mail the other a request to arbitrate, even if a lawsuit has been filed. The notice should describe the Dispute and relief sought. The receiving party must mail a response within 30 days. If you mail the demand, you may choose the arbitration group. Or, your demand may state that you want the parties to choose a local Arbiter. If related third parties or we mail the demand, you must respond in 30 days. Your response must choose an arbitration group or propose a local Arbiter. If it doesn't, we may choose the group. |
| Who arbitrates? | AAA, JAMS, or an agreed Arbiter. | You may select the American Arbitration Association ("AAA") (1-800-778-7879) http://www.adr.org or JAMS (1-800-352-5267) http://www.jamsadr.com. The parties may also agree in writing to a local attorney, retired judge, or Arbiter in good standing with an arbitration group. The Arbiter must arbitrate under AAA or JAMS consumer rules. You may get a copy of these rules from such group. Any rules that conflict with any of our agreements with you, don't apply. If these options aren't available, and the parties can't agree on another, a court may choose the group. The parties will then obtain an Arbiter under such group's rules. Such Arbiter must enforce your agreements with us, as they are written. |
| Will the hearing be held nearby? | Yes. | The Arbiter will order the hearing within 30 miles of your home or where the transaction occurred. |
| What about appeals? | Appeals are limited. | The Arbiter's decision will be final. A party may file the Arbiter's award with the proper court. Arbitration will solve appeals of a small-claims court judgement. A party may appeal under the FAA. If the amount in controversy exceeds $6,000.00, a party may appeal the Arbiter's finding. Such appeal will be to a 3 Arbiter panel from the same arbitration group. The appeal will be de novo, and solved by majority vote. |

<strong>Arbitration Fees and Awards.</strong>

| | | |
|---|---|---|
| Will we advance Arbitration Fees? | Yes, but you may pay costs. | We advance your "Arbitration Fees" if you ask us to. This includes filing, administrative, hearing, and Arbiter's fees. You pay your attorney fees and other expenses. |
| Are damages and attorney fees possible? | Yes, if allowed. | The Arbiter may award the same damages as a court. Arbiters may award reasonable attorney fees and expenses, if allowed by law. |
| Will you pay Arbitration Fees if you win? | No. | If the Arbiter awards you funds, you don't reimburse us the Arbitration Fees. |
| Will you ever pay Arbitration Fees? | Yes | If the Arbiter doesn't award you funds, then you may repay the Arbitration Fees. The Arbiter will decide whether you'll pay. |
| What happens if you win? | You could get more than the Arbiter awarded. | If an Arbiter's award to you exceeds our last Settlement Offer, we will pay 3 amounts. We will pay the greater of the award amount of $500.00 ("bonus payment"). We will pay your attorney fees ("attorney premium"). If the Arbiter orders, we will pay reasonable expert witness costs and other costs you incurred ("cost premium"). If we never made a Settlement Offer, we will pay the bonus payment, attorney premium, and any cost premium. The Arbiter may order the process for payment. If a law allows you more, this Clause won't prevent such award. We won't seek attorney fees and expenses. |
| Can an award be explained? | Yes. | A party may request details from the Arbiter, within 14 days of the ruling. Upon such request, the Arbiter will explain the ruling in writing. |

<strong>Other Options.</strong>

| If you don't want to arbitrate, can you still get a transaction? | Yes. You can get our services and decide not to arbitrate. | Consider these choices:<br>1.   **Informal Dispute Resolution.** Contact us and attempt to settle any Disputes.<br>2.   **Small-claims Court.** Seek to solve Disputes in small-claims court, within state law limits.<br>3.   **Opt-Out of Arbitration.** Sign and then timely opt-out. |
|---|---|---|
| Can you opt-out of the Clause? | Yes. Within 30 days. | Write us within 30 calendar days of signing your agreement to opt-out of the Clause for that agreement. List your name, address, account number and date. List that you "opt out." If you opt out, it will only apply to that agreement. |

**Print and retain a hard copy or electronic copy.**

19. **MISCELLANEOUS: Restrictive Endorsement:** We have the right to accept any check marked "payment in full" or any other restrictive endorsement without losing any of our rights to collect on the entire amount you owe us. **Governing Law, Venue:** This Agreement is governed by the laws of the state where you live. Venue for any dispute arising out of this Agreement will be the county where you live. **Severability:** If any provision of this Agreement is held to be invalid or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement will remain in full force and effect. You understand that time is of the essence in this Agreement. **Entire Agreement:** This Agreement represents the entire agreement between you and us concerning the Property.

20. **COMMUNICATION & MARKETING:** You understand and agree that we may monitor and/or record any of your phone conversations with any of our representatives. We may use automated telephone dialing, text messaging systems, and electronic mail to provide messages to you about your Agreement. You understand that when you receive such texts, calls, or e-mails, you may incur a charge from your communications provider. You consent to (i) contact at any address (including e-mail) or telephone number (including wireless cellular or residential landline) that you provide; (ii) any means of communication to reach you; (iii) the use of automated dialing systems and/or prerecorded messages; and (iv) text messages sent to your phone. No such contact will be deemed unsolicited or unauthorized. **You understand that receipt of goods and/or services is not conditioned upon your consent provided herein.** You consent to be contacted, from time to time, by Acima Credit, LLC, its affiliates, vendors, agents, successors and assigns, regarding your account, for collection purposes, and for telemarketing, mail, and email marketing purposes such as promoting goods and/or services at the telephone numbers and addresses provided to us.

*Right to Opt-out:* You understand you may opt-out of promotional communications at any time by writing to PO Box 1667, Draper, UT 84020 or by email at privacy@acimacredit.com.

Exhibit 1, Page 7

**NOTICE TO LESSEE**
**You are renting this property. You will not own it until you make all of the regularly scheduled payments or you use an early purchase option. You do not have the right to keep the property if you do not make required payments or do not use an early purchase option. If you miss a payment, we can repossess the property, but, you may have the right to the return of the same or similar property. See the contract for an explanation of your rights.**

Notice to the Lessee(s):
(a)      Do not sign this Rental-Purchase Agreement before you read it or if it contains any blank spaces.
(b)      You are entitled to an exact copy of the Rental-Purchase Agreement you sign. Keep it to protect your legal rights.

**BY SIGNING THIS AGREEMENT: (1) YOU ACKNOWLEDGE RECEIPT OF AN EXACT COPY OF THIS AGREEMENT, INCLUDING A COPY OF THE ABOVE TABLE; AND (2) YOU AGREE TO ALL TERMS OF THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION (¶15), AND THE EFT AUTHORIZATION (¶13).**

When you sign the Agreement, Acima Credit, LLC, or one of its subsidiaries will purchase the Property you have selected at a merchant store and enter a rental-purchase contract with you for the Property. The following table shows certain financial details of the lease:

| TOTAL OF PAYMENTS/TOTAL COST/RENT-TO-OWN PRICE | COST OF RENTAL | ACIMA CASH PRICE | |
|---|---|---|---|
| $4,927.50 | $2,677.50 | $2,250.00 | |
| You must pay this amount to own the property if you make all the regular Renewal Payments (excludes tax). You can buy the property for less under the early purchase option. | Amount over Acima Cash Price you will pay if you make all regular Renewal Payments (excludes tax). | Property available at this price for cash from the Lessor at the time of the Agreement. See about your early purchase option rights. | |
| | AMOUNT OF EACH PAYMENT | NUMBER OF PAYMENTS | RENTAL PERIOD |
| | $187.60/every-other-week | 26 | 365 DAYS |
| | Taxes will be added to all payments when required to do so by your state. | | This represents the duration of the Lease if all regularly scheduled payments are made. |
| The rental property is NEW and is being acquired by the lessor on the lease date above. | | | |

*Sieara Farr*

X_____
LESSEE

X_____
Reed Farnsworth, Authorized Representative, Acima Credit, LLC

4.3.1

Exhibit 1, Page 8

# Exhibit B

You can purchase the Property at any time during the first 90 Days (three months if in California) of the Agreement by paying us the Acima Cash Price plus tax and any Other Charges due, minus any payments you have made. You have the right to acquire ownership of the Property at any time after the first 90 Days (three months if in California) by tendering to us an amount equal to all past due payments and fees, plus an amount equal to 45.0% of all Renewal Payments remaining under the Agreement. You must affirmatively elect to exercise the Early Purchase Option. In no event shall the Early Purchase Option Amount be less than the amount of one Renewal Payment.

The table below shows the amount required to exercise the Early Purchase Option after each rent payment, assuming each rent payment is paid on time.

| Payment # | Payment Amount | Remaining Total of Payments | Early Purchase Option Amount |
|---|---|---|---|
| 1 | $50.00 | $4,877.50 | $2,200.00 |
| 2 | $187.60 | $4,689.90 | $2,012.40 |
| 3 | $187.60 | $4,502.30 | $1,824.80 |
| 4 | $187.60 | $4,314.70 | $1,637.20 |
| 5 | $187.60 | $4,127.10 | $1,449.60 |
| 6 | $187.60 | $3,939.50 | $1,262.00 |
| 7 | $187.60 | $3,751.90 | $1,688.36 |
| 8 | $187.60 | $3,564.30 | $1,603.94 |
| 9 | $187.60 | $3,376.70 | $1,519.52 |
| 10 | $187.60 | $3,189.10 | $1,435.10 |
| 11 | $187.60 | $3,001.50 | $1,350.68 |
| 12 | $187.60 | $2,813.90 | $1,266.26 |
| 13 | $187.60 | $2,626.30 | $1,181.84 |
| 14 | $187.60 | $2,438.70 | $1,097.42 |
| 15 | $187.60 | $2,251.10 | $1,013.00 |
| 16 | $187.60 | $2,063.50 | $928.58 |
| 17 | $187.60 | $1,875.90 | $844.16 |
| 18 | $187.60 | $1,688.30 | $759.74 |
| 19 | $187.60 | $1,500.70 | $675.32 |
| 20 | $187.60 | $1,313.10 | $590.90 |
| 21 | $187.60 | $1,125.50 | $506.48 |
| 22 | $187.60 | $937.90 | $422.06 |

Exhibit 1, Page 9

| | | | |
|---|---|---|---|
| 23 | $187.60 | $750.30 | $337.64 |
| 24 | $187.60 | $562.70 | $253.22 |
| 25 | $187.60 | $375.10 | $168.80 |
| 26 | $187.60 | $187.50 | $84.38 |
| 27 | $187.50 | $0.00 | $0.00 |

The amounts and payments reflected in this table do not include applicable sales tax amounts and may change based on events that occur after this document was created.  Please visit www.acimacredit.com for the most accurate Early Purchase Option Amount.

