**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SIEARA FARR,<br><br>    Plaintiff,<br><br>vs.<br><br>ACIMA CREDIT LLC,<br><br>    Defendant. | CASE NO. 20-CV-8619-YGR<br><br>**ORDER GRANTING MOTION FOR ORDER DENYING CLASS CERTIFICATION**<br><br>Re: Dkt. No. 21 |

Plaintiff Sieara Farr brings this putative consumer class action against defendant Acima Credit LLC for violations of California's Karnette Rental-Purchase Act, Consumers Legal Remedies Act, and Unfair Competition Law. Farr alleges that Acima unlawfully charged her a processing fee when she applied to finance certain merchandise.

Discovery commenced shortly after the initial case management conference, at which time the Court set a briefing schedule for plaintiff's motion for class certification which is currently due on November 8, 2021. Currently pending before the Court is defendant's preemptive motion for an order denying class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure as well as plaintiff's motion to amend the complaint to add two additional plaintiffs.

Having carefully considered the papers submitted in support and in opposition, the arguments of the parties, the pleadings in this action, and the admissible evidence, for the reasons set forth below, the Court **GRANTS** the motion for an order denying class certification.

**I. BACKGROUND**

On September 18, 2020, plaintiff Sieara Farr sought to acquire furniture from a nonparty merchant. (First Amended Complaint ("FAC"), Dkt. No. 1-2, ¶ 14.) To finance this transaction, plaintiff entered into a rental-purchase agreement ("RPA") with defendant Acima Credit LLC. (*Id.* ¶ 15.) Defendant offers to enter into rent-to-own arrangements with customers on behalf of retail merchants with whom it has established business relationships. (*Id.* ¶ 2.) As an alternative to a traditional retail sale, this arrangement allows qualified customers who may not be able to pay

the cost up front to rent the good from the lessor (defendant in this case). (*Id.* ¶¶ 2, 8.) Title of the good is transferred to the customer after they complete the total agreed-upon number of lease payments. (*Id.* ¶ 10.)

The Karnette-Rental Purchase Act governs RPAs entered into in the state of California. (*Id.* ¶ 3 (citing Cal. Civ. Code § 1812.620, *et seq.*).) Among other things, the Karnette Act prohibits a lessor from charging any fee that is not permitted thereby. (*Id.* ¶ 12 (citing Cal. Civ. Code § 1812.624(a)(7)).) A fee is defined as any payment other than a rental payment. (*Id.* (citing Cal. Civ. Code § 1812.622(g)).) For any fee that *is* permitted by the Karnette Act, a lessor can charge such a fee only to the extent that it is "reasonable and actually incurred by the lessor." (*Id.* ¶ 13 (citing Cal. Civ. Code § 1812.624(a)(7)).) Moreover, to the extent that a fee is permitted by the Karnette Act, the amount and purpose of the fee must be stated in the RPA. (*Id.* ¶ (citing Cal. Civ. Code § 1812.623(a)(7)).)

At the merchant's store, plaintiff completed an online application with defendant, pursuant to which she was approved to lease the furniture. (*Id.* ¶ 16.) In order to submit the application, plaintiff was required to pay a $50 processing fee. (*Id.*) The rental-purchase agreement allegedly did not disclose the payment but instead "lumped the $50 processing fee into the figure shown as the 'Acima Cash Price.'" (*Id.* ¶ 17.) Plaintiff alleges that defendant violated the Karnette Act by charging her the processing fee and by failing to set forth the fee in the RPA. (*Id.* ¶ 18.) Plaintiff alleges that this conduct also violated California's Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). (*Id.* ¶¶ 36–44.) Accordingly, plaintiff seeks to represent the following class: "All individuals who, during the applicable statute of limitations, entered into a rental-purchase agreement with Acima Credit, LLC in the State of California and were charged a processing fee." (*Id.* ¶ 23.)

The RPA between plaintiff and defendant contains a section entitled "Jury Trial Waiver and Arbitration Clause," which provides in relevant part:

| 18. JURY TRIAL WAIVER AND ARBITRATION CLAUSE. By signing, you agree to this Jury Trial Waiver and Arbitration Clause ("Clause"). Background and Scope. | | |
|---|---|---|
| What is arbitration? | An alternative to court. | In arbitration, a third party ("Arbiter") solves Disputes in a hearing ("hearing"). You, related third parties, and we, waive the right to go to court. Such "parties" forgo jury trials. |
| Is it different from court and jury trials? | Yes. | The hearing is private and less formal than court. Arbiters may limit pre-hearing fact finding, called "discovery." The decision is final. Courts rarely overturn Arbiters. |
| Who does the Clause cover? | You, Us, and Others. | This Clause governs the parties, their heirs, successors, assigns, and third parties related to any Dispute. |
| Which Disputes are covered? | All Disputes. | In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate. |
| Are you waiving rights? | Yes. | You waive your rights to: 1. Have juries solve Disputes. 2. Have courts, other than small-claims courts, solve Disputes. 3. Serve as a private attorney general or in a representative capacity. 4. Be in a class action. |
| Are you waiving class action rights? | Yes. | COURTS AND ARBITERS WON'T ALLOW CLASS ACTIONS. You waive your rights to be in a class action, as a representative and a member. Only individual arbitration, or small-claims courts, will solve Disputes. You waive your right to have representative claims. |
| What law applies? | The Federal Arbitration Act ("FAA"). | This transaction involves interstate commerce. Thus, the FAA governs. If a court finds the FAA doesn't apply, and the finding can't be appealed, then your state's law / the state law where you were when you signed governs. The Arbiter must apply substantive law consistent with the FAA. The Arbiter must follow statutes of limitation and privilege claims. |
| Can the parties try to solve Disputes first? | Yes. | We can try to solve Disputes if you call us at (801) 297-1982. If this doesn't solve the Dispute, mail us written notice, within 30 days of the Dispute date. In your notice, tell us the details and how you want to solve it. We will try to solve the Dispute. If we make a written offer ("Settlement Offer"), you can reject it and arbitrate. If we don't solve the Dispute, either party may start arbitration. To start arbitration, contact an Arbiter or arbitration group listed below. No party will disclose settlement proposals to the Arbiter during arbitration. |
| How should you contact us? | By mail. | Send mail to: ATTN: Compliance Department, PO Box 1667, Draper, UT 84020. You can call us or use certified mail to confirm receipt. |
| Can small-claims court solve some Disputes? | Yes. | Each party has the right to arbitrate, or to go to small-claims court if the small-claims court has the power to hear the Dispute. Arbitration will solve all Disputes that the small-claims court does not have the power to hear. If there is an appeal from small-claims court, or if a Dispute changes so that the small-claims court loses the power to hear it, then the Dispute will only be heard by an Arbiter. |
| Do other options exist? | Yes. | Both parties may use lawful self-help remedies. This includes set-off or repossession and includes our later sale, donation, or rental of the Property. Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief. |
| Will this Clause continue to govern? | Yes, unless otherwise agreed. | The Clause stays effective, unless the parties sign an agreement stating it doesn't. The Clause governs if you rescind the transaction. It governs if you default, renew, prepay, or pay. It governs if you terminate, if you reinstate, and if you return the Property. It governs if your Agreement is discharged through / impacted by bankruptcy. The Clause remains effective, despite a transaction's termination, amendment, expiration, or performance. |

(*Id.* ¶ 15, Exhibit 1, at 5–7 ("Arbitration Clause").) The Arbitration Clause provides that consumers can opt out of the clause by providing written notice to defendant within 30 calendar days of signing the RPA. (*Id.* ¶ 20.) Plaintiff timely opted out of the Arbitration Clause. (*Id.*)

"With respect to consumers who sign a rental-purchase agreement but do not timely opt of the Arbitration Clause, the Arbitration Clause generally provides that disputes between the consumer and Acima are to be resolved in individual arbitration or small claims court." (*Id.* ¶ 21.) However, according to plaintiff, "the Arbitration Clause expressly provides that injunctions and other equitable relief are not subject to that restriction." (*Id.* (citing "Do other options exist" provision of Arbitration Clause).) Pursuant to this provision, plaintiff seeks equitable relief on behalf of the proposed class, namely, restitution and a public injunction enjoining defendant from

3

charging the processing fee. (*Id.* ¶ 22.)

Although plaintiff has yet to file a motion for class certification, defendant moves for an order denying class certification, arguing that plaintiff cannot represent a class comprised largely of customers who agreed not to be part of a class action. (Motion for Order Denying Class Certification ("Mtn."), Dkt. No. 21, at 1.) In support of its motion, defendant filed the declaration of Robert Christiansen, defendant's chief information officer. (Declaration of Robert Christiansen in Support of Motion, Dkt. No. 21-1.) According to Mr. Christiansen, defendant's business records reflect that between October 16, 2016 (four years before the action was filed) and through January 31, 2021, only three customers who have addresses in California or acquired goods from a merchant with a California address – one of whom is Plaintiff – have opted out of the arbitration provision contained in Acima's rental-purchase agreement." (*Id.* ¶ 6.)[1] Although Mr. Christiansen does not attest to the number of total customers who entered into RPAs in California, Acima's notice of removal represents that it entered into no fewer than 227,375 RPAs with persons who listed addresses located in California. (Notice of Removal, Dkt. No. 1, ¶ 9.)

## II. LEGAL FRAMEWORK

"Before certifying a class, the trial court must conduct a rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Under the Federal Rules of Civil Procedure, a court may certify if the class meet the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a). In addition to meeting these four requirements of Rule 23(a), class actions must fall within one of the three types specified in Rule 23(b).

---

[1] Mr. Christensen also submitted the five versions of RPAs in use since October 16, 2016: (1) an RPA executed by all California customers executed between October 16, 2016 through September 20, 2017; (2) an RPA for the period between September 20, 2017 through April 24, 2018; (3) an RPA for the period between April 24, 2018 through September 26, 2018; (4) an RPA for the period for the period between September 26, 2018 through January 5, 2021; and (5) an RPA for the period since January 5, 2021. Plaintiff signed an RPA on September 18, 2020. (FAC ¶ 15, Exh. 1.) This version of the RPA, effective since September 26, 2018, and the latest version, effective since January 5, 2021, contain identical versions of the two relevant provisions at issue discussed below. Accordingly, the Court limits its review to these two particular RPAs.

4

Courts are required to determine whether to certify the action as a class action at "an early practicable time." Fed. R. Civ. P. 23(c)(1). Rule 23 "does not preclude a defendant from bringing a 'preemptive' motion to deny certification" where the class action plaintiff has yet to seek certification. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 941 (9th Cir 2009). While such a motion is disfavored and may be denied as premature, district courts have "broad discretion" to control the class certification process and to determine whether discovery will be permitted. *Id.* at 942. A party seeking class certification is "not always entitled to discovery on the class certification issue," but in some cases, "the propriety of a class action cannot be determined . . . without discovery." *Id.* The "better and more advisable practice" for a district court is to provide litigants "an opportunity to present evidence regarding whether a class action is maintainable."

However, "[w]here the necessary factual issues may be resolved without discovery, [pre-certification discovery] is not required." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (denial of certification proper where 23(a) requirements could not be met regardless of the discovery undertaken and there was no "reasonable probability" that any of the section (b) hurdles could be overcome). The Ninth Circuit has upheld district court decisions refusing to allow pre-certification discovery where plaintiffs failed either to show a prima facie case for class relief or to establish that discovery was likely to produce substantiation of the class allegations. *See id.* ("[W]here the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites . . . the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations."); *see also Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion."); *Vinole*, 571 F.3d at 941 (rejecting contention that it is procedurally improper for a trial court to rule on a defense motion to deny class certification before plaintiffs failed their

1  motion for class certification while acknowledging that Ninth Circuit precedent "stand[s] for the
2  unremarkable proposition that often the pleadings alone will not resolve the question of class
3  certification and some discovery will be warranted").

### III. ANALYSIS

Defendant argues that plaintiff cannot satisfy the requirements of Rule 23 because "[a]lthough she and two other individuals opted out of [the] arbitration agreement, all other members of the putative class she seeks to represent have agreed by contract not to be part of a class action[.]" (Mtn. at 1.) Plaintiff responds that customers who did not opt out are not precluded from participating in a class action because, since September 26, 2018, the Arbitration Clause, "expressly *exempts* equitable relief from mandatory arbitration," which plaintiff seeks on behalf of the putative class. (Opposition to Motion ("Opp."), Dkt. No. 23, at 1.) Thus, the Court considers (A) whether the Arbitration Clause does, in fact, exempt the equitable claims brought in this case; and (B) whether plaintiff could represent the proposed class for such claims.

### A. WHETHER THE EQUITABLE CLAIMS IN THIS CASE ARE SUBJECT TO MANDATORY ARBITRATION

Plaintiff contends that claims for equitable relief are not subject to mandatory arbitration. (Opp. at 1 ("[Defendant's] arbitration clause has authorized customers to pursue equitable relief outside of arbitration, whether or not they exercise a right to opt out of arbitration altogether.").) In support of this contention, plaintiff points to the "Do other options exist?" provision:

> **Do other options exist? Yes.** Both parties may use lawful self-help remedies. This includes set-off or repossession and includes our later sale, donation, or rental of the Property. *Both parties may seek remedies which don't claim money damages. This includes pre-judgment seizure, injunctions, or equitable relief.*

(Arbitration Clause (italics supplied; bold in original).) Defendant disagrees with plaintiff's interpretation, arguing that "nothing in the RPAs, however, 'exempts' claims for equitable relief from mandatory arbitration." (Reply in Support of Motion, Dkt. No. 25, at 1.) In support of this argument, defendant points to the "Which Disputes are covered?" provision:

> **Which Disputes are covered? All Disputes.** In this Clause, the word "Disputes" has the broadest possible meaning. This Clause governs all "Disputes" involving

the parties. This includes all claims even indirectly related to your application and agreements with us. This includes claims related to information you previously gave us. It includes all past agreements. It includes, as may be applicable, any additional periods, extensions, renewals, and plans. It includes claims related to damaged property, buyout, reinstatement, loss, damage, warranty, maintenance, collection, possession, privacy, and customer information. It includes claims related to setting aside this Clause. It includes claims about the Clause's validity and scope. It includes claims about whether to arbitrate.

(Arbitration Clause (bold in original).)

The threshold issue is whether equitable claims in general are exempt from mandatory arbitration. In construing arbitration agreements, the courts apply state law principles of contract formation and interpretation. *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). Under California contract law, "if the language [of a contract] is clear and explicit, and does not involve an absurdity" the language must govern the contract's interpretation. Cal. Civ. Code § 1638. Moreover, "if reasonably practicable" a contract must be interpreted as a whole, "so as to give effect to every part, . . . each clause helping to interpret the other." Cal. Civ. Code. § 1641; *see also In re Affordable Hous. Dev. Corp.*, 175 B.R. 324, 329 (9th Cir. B.A.P. 1994) ("California law provides that one phrase of a contract should not be interpreted so as to render another phrase of the contract meaningless.").

As drafted, tension exists between the "Do other options exist?" and "Which Disputes are covered?" provisions. Thus, the Court cannot find as a matter of law that the Arbitration Clause unambiguously exempts *all* claims for equitable relief from arbitration. The Ninth's decision in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), albeit unpublished, suggests a narrower reading. In that case, the district court considered language in an arbitration agreement that was also seemingly contradictory:

> 14. DISPUTES. ANY DISPUTE OR CLAIM RELATING IN ANY WAY TO THE SERVICES OR THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT, except that you may assert claims in small claims court if your claims qualify. The Federal Arbitration Act governs the interpretation and enforcement of this provision; the arbitrator shall apply California law to all other matters. *Notwithstanding anything to the contrary, any party to the arbitration may at any time seek injunctions or other forms of equitable relief from any court of competent jurisdiction.* . . .

*Arena v. Intuit Inc.*, 444 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (emphasis supplied), *reversed and remanded by Dohrmann*, 823 F. App'x at 485. "Relying on the [last sentence], the district court indicated that even if the dispute between the [p]laintiffs and [defendant] was subject to arbitration, it could nonetheless adjudicate [p]laintiffs' claims for equitable relief." *Dohrmann*, 823 F. App'x at 484.

However, the Ninth Circuit rejected this interpretation, agreeing with the defendant that this language "only permits the district court to issue equitable relief in aid of arbitration, not determine the merits of an arbitrable dispute." *Id.* As the Ninth Circuit reasoned:

> The language "any party to the arbitration," "suggests that arbitration still applies to all disputes, but that in addition, the parties are 'entitled to pursue equitable remedies' before courts." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1285 (9th Cir. 2009). "If the parties intended to carve out an exception to arbitration for all equitable claims, they could have done so" without this language and "[b]ecause the parties includes this language it is plausible and a permissible contract interpretation that the equitable claims exception . . . was intended to apply only to claims designed to maintain the status quo between the parties." *Id.*

*Dohrmann*, 823 F. App'x at 485.

Like the language in *Dohrmann*, the language "other options" in the Arbitration Clause at issue "suggests that arbitration still applies to all disputes." *See Dohrmann*, 823 F. App'x at 485. "If the parties intended to carve out an exception to arbitration for *all* equitable claims, they could have done so" more clearly by including an exception within the "Which Disputes are covered?" provision itself. *Id.* (emphasis supplied). However, as that section provides, "the word 'Disputes' has the broadest possible meaning. This Clause governs all 'Disputes' involving the parties." (Arbitration Clause.) Adopting plaintiff's interpretation that equitable claims are wholly exempt from arbitration would nullify this literal language.

Furthermore, absurd results follow from plaintiff's reading. A consumer seeking *any* form of equitable relief could circumvent arbitration, even where, as here, such relief is predicated on a dispute presumably falling within the scope of the arbitration agreement. "It would make little sense to include such an expansive loophole in what is otherwise a sweeping arbitration provision." *Info. Sys. Audit & Control Ass'n v. TeleComm. Sys. Inc.*, No. 17-CV-2066 (JBG), 2017 WL 2720433, at *4 (N.D. Ill. June 23, 2013) ("[Plaintiff's] proposed interpretation of the

8

equitable relief exception is untenable. . . . This would permit a party to obtain from a court essentially the same relief as that otherwise reserved for the arbitrator.").[2] To the extent there is any ambiguity in this case, the Arbitration Clause "should be interpreted as granting arbitration coverage over 'all disputes' arising from the [RPA]." *Comedy Club*, 553 F.3d at 1286 (applying federal presumption in favor of arbitration).[3]

Thus, the Court finds that the "Do other options exist?" provision does not exempt *all* equitable claims but "was intended to apply only to claims designed to maintain the status quo between the parties." *Id.* at 1285; *see also Dohrmann*, 823 F. App'x at 484 (similar language "only permits the district court to issue equitable relief in aid of arbitration, not determine the

---

[2] *See also Erving v. Virginia Squires Basketball Club*, 468 F.2d 1067, 1067 (2d Cir. 1972) ("We find no lack of mutuality in the arbitration clause of the contract. Both parties are required to arbitrate any disputes arising between them. The provision relative to 'obtaining an injunction or other equitable relief' is merely declaratory of existing legal rights."); *Davis v. SEVA Beauty LLC*, No. 17-CV-547 (TSZ), 2017 U.S. Dist. LEXIS 148434, at *9 (W.D. Wash. Sept. 13, 2017) ("A party may not, however, circumvent the arbitration clause by simply seeking equitable remedies for claims that are squarely within the scope of matters to be arbitrated."); *Baldwin Tech. Co. v. Printers' Serv., Inc.*, No. 15-cv-7152 (GBD), 2016 WL 354914, at *3, n. 4 (S.D.N.Y. Jan. 27, 2016) ("[W]here a contract has both a broad arbitration clause and a clause permitting the parties to seek injunctive relief before a court, courts in this District have construed the latter clauses as permitting the parties to seek 'injunctive relief . . . in aid of arbitration, rather than . . . transforming arbitrable claims into nonarbitrable ones depending on the form of relief prayed.'") (quoting *Remy Amerique Inc. v. Touzet Distribution, S.A.R.L.*, 816 F. Supp. 213, 218 (S.D.N.Y. 1993)); *Clarus Medical LLC v. Myelotec, Inc.*, No. 05-CV-934 (DWF), 2005 WL 3272139, at *4 (D. Minn. Nov. 30, 2005) ("[I]f the Court were to adjudicate [plaintiff's] requests for declaratory relief, the Court would, in effect, read out the broad arbitration clause of section 20(a). In other words, so long as a claim was disguised as a declaratory judgment action, that claim could be brought before a court and thus circumvent the very broad language of the arbitration clause.").

[3] The Court assumes without deciding that the Federal Arbitration Act governs the RPA (as indicated by the RPA itself). However, even if California law governs the RPA at issue, the Court would still find that the equitable claims brought by plaintiff in this case are subject to arbitration. While California's *contra proferentem* rule requires ambiguities in a contract to be construed against the drafter, the ambiguity is removed by applying California's absurd-results canon. *Compare* Cal. Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.") *with id.* § 1654 ("*In cases of uncertainty not removed by the preceding rules*, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.") (emphasis supplied).

merits of an arbitrable dispute"). Indeed, a court's authority to "issue equitable relief in aid of arbitration" is well established. *See Toyo Tire Holdings of Americas, Inc. v. Continental Tire North Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010). Such "judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process." *Id.* Notwithstanding, plaintiff here seeks a public injunction enjoining defendant from charging an application fee in violation of the Karnette Act for its RPAs in California. This injunction will not aid the arbitration proceedings. To the contrary, this relief hinges on the merits of plaintiff's claims. Accordingly, the Arbitration Clause does not exempt the equitable claims brought in this case.[4]

## B. WHETHER PLAINTIFF COULD REPRESENT THE PROPOSED CLASS

Next, the Court considers whether plaintiff could represent class members who did not opt and thus whose claims may be subject to mandatory arbitration. Defendant argues that having opted out of the Arbitration Clause herself, plaintiff cannot show that her defenses are typical, that she is an adequate class representative, or that the putative class is numerous. Plaintiff maintains that because she seeks only equitable relief on behalf of the proposed class, there is no reason why she cannot satisfy the Rule 23(a) requirements. Thus, her position relies on the premise that the Court has already rejected, that is, that the Arbitration Clause exempts *all* equitable claims. In light of its conclusion to the contrary, the Court finds that plaintiff cannot establish the typicality and adequacy requirements of Rule 23.

The typicality requirement for class certification is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is "permissive" and requires only that the representative's claims are "reasonably co-extensive with those of absent class members." *Rodriguez v. Hayes*,

---

[4] In light of its conclusion that the arbitration clause does not exempt the equitable claims brought in this case, the Court need not resolve the issue of whether the claims are also subject to the class action waiver, a question that the Court posed to the parties in a separate order issued after the hearing. (Dkt. No. 31.) In that order, the Court considered whether it needed supplemental briefing to address whether the equitable claims brought here, even if exempt from the arbitration clause, may nevertheless be subject to the class action waiver contained therein. Because the Court finds no blanket exemption for equitable claims, it is not necessary to consider the applicability of the class action waiver.

10

591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)). "Defenses unique to a class representative counsel against class certification only where they 'threaten to become the focus of the litigation.'" *Id.* (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, where there is a "danger that absent class members will suffer if their representative is preoccupied" with their own unique defenses, class certification should not be granted. *Hanon*, 976 F.2d at 508 (internal citation omitted). The adequacy requirement considers whether a class representative will "fairly and adequately protect the interests of the class," meaning that the representative does not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see Ellis v. Costco Wholesale Corp.*, 657 F.3d at 970, 985 (9th Cir. 2011).

Even if plaintiff's claims arise from the same course of conduct (the charging of processing fees for defendant's rental-purchase agreements) and are based on the same legal theories as the claims of the proposed class (violations of the Karnette Act, the CLRA, and the UCL), individuals who did not opt out of the Arbitration Clause are subject to the mandatory arbitration and class waiver defenses not applicable to plaintiff. Litigation of these defenses could very well threaten to overwhelm other issues in the litigation. Other district courts in the Ninth Circuit have decided class certification is properly denied based upon the existence of an arbitration agreement and class action waiver applicable to unnamed class members but not the proposed class representative. *See, e.g.*, *Campanelli v. Image First Healthcare Laundry Specialists, Inc.*, No. 15-CV-4456 (PJS), 2018 WL 6727825, at *8 (N.D. Cal. Dec. 21, 2018) (named plaintiff was "not an adequate representative and his claims lack[ed] typicality with respect to putative Rule 23 plaintiffs who have signed the [dispute resolution agreement] or the [e]mployee [a]greement"); *Conde v. Open Door Marketing, LLC*, 223 F. Supp. 3d 949 (N.D. Cal. 2017) (finding that named plaintiffs were not subject to defenses typical of proposed class because, having not signed agreements with similar terms, they have "no interest in the enforceability of the arbitration agreement itself, and lack the ability to challenge the agreements on behalf of individuals who did sign such agreements" ); *Tan*, 2016 WL 4721439, at *3 (N.D Cal. July 19, 2016) ("[B]ecause [plaintiff] is in a position unique from all but one other driver in California, his claims are not

11

typical of the putative class members nor can he adequately represent the interests of those members, who are potentially bound by the arbitration and class action waiver provisions.").

Indeed, the Ninth Circuit, in an unpublished decision, vacated a district court's certification order under similar circumstances:

> The district court abused its discretion to the extent it certified classes and subclasses that include employees who signed class action waivers. Avilez's arbitration agreement does not contain a class action waiver and counsel did not dispute that those who signed such waivers have potential defenses that Avilez would be unable to argue on their behalf. To the extent the classes and subclasses include individuals who signed class action waivers, Avilez is not an adequate representative, Fed. R. Civ. P. 23(a)(4), and her claim lacks typicality, Fed. R. Civ. P. 23(a)(3).

*Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015).[5]

Here, the Court finds that plaintiff cannot represent a class made up of individuals who, unlike her, may be subject to the mandatory arbitration agreement and class action waiver. Accordingly, plaintiff will not be able to demonstrate her typicality and adequacy with respect to the proposed class.[6] Nor has plaintiff identified any discovery that would dictate a different conclusion. *See, e.g., Conde*, 223 F. Supp. 3d at 958 (concluding that additional discovery was not required to decide defendants' motion to deny class certification).[7] Therefore, the motion for

---

[5] In opposition, plaintiff distinguishes *Campanelli* and *Avilez* on the grounds that "in the instant case, the customers from at least September 26, 2018 to the present signed agreements that authorize claims for equitable relief to be adjudicated outside of arbitration, and discovery is just getting underway." (Opp. at 7.) As discussed, this argument does not persuade.

[6] In light of its findings with respect to typicality and adequacy, the Court need not address numerosity. While plaintiff did not dispute the number of opt-outs, her counsel expressed a desire to depose defendant on this issue. (Dkt. No. 33.) This open question does not impact the Court's findings regarding typicality and adequacy because, while the exact number is not known, Mr. Christiansen's declaration indicates that a number of customers are potentially subject to the arbitration clause and class action waiver.

[7] When specifically asked by the Court to identify any pertinent class discovery (Dkt. No. 32), plaintiff responded that discovery should include the following: "(i) identification of persons who drafted the Arbitration Clause, and production of all documents that reflect the drafting process; (ii) Acima's revenue and profits during the Class Period; (iii) the number of California customers; (iv) any effort made by any customer to modify any term in the standard agreement; (v) production of all demographic or socioeconomic data concerning Acima's customer base, including but not limited to income, net worth, credit score, etc.; and (vi) a deposition of Acima's

an order denying class certification is **GRANTED**.

IV. **CONCLUSION AND PROCEDURAL ISSUES**

In sum, the equitable claims brought in this case are not exempt from arbitration, nor can plaintiff adequately represent a class made up of individuals that may be subject to the mandatory arbitration agreement and class action waiver. Accordingly, the motion for an order denying class certification is **GRANTED**.

The Court notes that there is a pending motion for leave to file a second amended complaint. (Dkt No. 34.) While leave is generally freely granted under Federal Rule of Civil Procedure 15(a)(2), the request here is presumptively futile in light of the instant order. Plaintiff may file a supplemental brief not to exceed five pages by **July 21, 2021**, addressing this issue. If none is filed, the Court will deny the motion.

**IT IS SO ORDERED.**

This terminates Docket Number 21.

Dated: July 7, 2021

  **YVONNE GONZALEZ ROGERS**
  **UNITED STATES DISTRICT COURT JUDGE**

---

declarant concerning the number of opt-outs, and one or more depositions concerning the foregoing items." (Dkt. No. 33.) None of this information would change the Court's findings that plaintiff in particular cannot satisfy typicality or adequacy with respect to the proposed class.

13